UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTT WEBBER,

    Petitioner,                                        Case Number 1:10-CV-11270
                                                                    Honorable Thomas L. Ludington

v.

STATE OF MICHIGAN,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT
OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Scott Webber was convicted in Michigan state court of commission of a felony with a firearm in violation of Mich. Comp. Laws § 750.227b and possession of a firearm by a felon in violation of Mich. Comp. Laws § 750.224f. He was sentenced to one-to-five years imprisonment for the commission of a felony with a firearm conviction, and a consecutive two-year term for the possession of a firearm by a felon conviction.

Petitioner now seeks habeas relief in this Court pursuant to 28 U.S.C. § 2254. The petition raises six claims: (1) Petitioner's convictions violate double jeopardy; (2) the trial court made erroneous evidentiary rulings and issued incorrect jury instructions; (3) the prosecutor committed misconduct; (4) trial counsel provided ineffective assistance; (5) the evidence presented at trial was insufficient to support the verdict; and (6) Petitioner had a right under the Second Amendment to possess a weapon in his home to defend himself. For the following reasons, the petition will be denied.

**I**

The facts relied upon by the Michigan Court of Appeals are presumed correct on federal habeas review. 28 U.S.C. § 2254(e)(1); *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). That court recounted:

> Defendant's convictions arise from an incident in which he alleged[ly] shot Terry "T-Bone" Thomas. Thomas testified that he went to defendant's home to purchase drugs. According to Thomas, defendant was upset that Thomas had spoken to the police approximately a week earlier and was concerned that Thomas was a "snitch." While at defendant's home, the two became involved in an argument. According to Thomas, defendant then pulled a gun and shot him.
>
> Defendant claimed that Thomas arrived at his house visibly drunk and out of control, demanding money and threatening him. According to defendant, the men were arguing on defendant's front porch when Thomas pulled a gun, so defendant approached Thomas and knocked the gun out of his hand. Defendant testified that he picked up the gun and demanded that Thomas leave, but Thomas swung a flashlight at him and struck defendant's hand with the gun, causing it to accidentally discharge. Defendant maintained that he thereafter went back into his house, not realizing that Thomas had been shot.

*People v. Webber*, No. 276350, 2008 WL 2744295, at *1 (Mich. Ct. App. July 15, 2008).

In addition to the two firearm offenses noted above, Petitioner was charged with assault with intent to commit murder — an offense potentially carrying a life sentence. The jury acquitted Petitioner of the assault charge but found him guilty of the two firearm violations.

Following sentencing, Petitioner filed a direct appeal in the Michigan Court of Appeals and asserted eight claims. First, he argued that his convictions should be overturned because there was insufficient credible evidence at trial to prove the defendant guilty. Second, he argued that his consecutive sentences constitute multiple punishments for the same offense, violating state and federal double jeopardy protections. Third, he argued that the trial court deprived him of a fair trial and his due process rights by admitting improper evidence, not admitting defense

evidence, and committing instructional errors. Fourth, he argued that his sentence violated his due process rights because it was based on an improper scoring of the sentencing guidelines, the use of an incorrect burden of proof and insufficient facts, and the improper application of the habitual offender act. Fifth, he argued that correctly scoring the guidelines would require resentencing. Sixth, he argued that he received ineffective assistance of counsel. Seventh, he argued that he was sentenced based on inaccurate information contained in the presentence investigation report. And eighth, he argued that the prosecutor's actions denied Petitioner a fair trial, violating and his due process rights.

The Court of Appeals affirmed Petitioner's convictions. *Id.* Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. He raised the same eight claims noted above, as well as a new claim asserting that his rights under the Second Amendment were violated. The Michigan Supreme Court remanded the case to the trial court to correct errors in the pre-sentencing investigation report, but it otherwise denied leave to appeal. *People v. Webber*, 762 N.W.2d 922 (Mich. 2009) (unpublished table op.).

Petitioner then filed an application for habeas relief in this Court. The petition raises six claims. First, Petitioner argues that his convictions violate double jeopardy. Second, Petitioner argues that the trial court deprived him of his due process rights by admitting improper evidence and committing instructional errors. Third, Petitioner argues that the prosecutor's actions denied Petitioner a fair trial and violated his due process rights. Fourth, Petitioner argues that he received ineffective assistance of counsel. Fifth, Petitioner argues that the evidence presented at trial was insufficient to prove his guilt. And sixth, Petitioner argues that his convictions are constitutionally barred by the Michigan Constitution.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which governs this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue a writ of habeas corpus only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2); *see Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir.1998). Mere error by the state court does not justify issuance of the writ. Rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520–21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotation marks omitted)).

Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous.").

Emphasizing the limited scope of this review, the Supreme Court writes that "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded

jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 785–86 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III

### A

Petitioner first contends that his sentences violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

Among its protections, the Fifth Amendment provides "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life of limb." With these twenty words, the Double Jeopardy Clause confers three distinct protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (internal alteration omitted) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). At issue here, as noted, is the final protection.

The protection against multiple punishments for the same offense, the Supreme Court instructs, is simply a function of the constitutional principle of the separation of powers: "Legislatures, not courts, prescribe the scope of punishments." *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *see Whalen v. United States*, 445 U.S. 684, 689 (1980) (citing *United States v. Wiltberger*, 5 Wheat. 76, 95 (1820); *United States v. Hudson & Goodwin*, 7 Cranch 32, 34 (1812)); *see generally* Akhil Reed Amar, *Double Jeopardy Law Made Simple*, 106 Yale L.J. 1807, 1818 (1997) ("The Eighth Amendment's Cruel and Unusual Punishment Clause might impose limits on the total amount of punishment that can be heaped upon a person for a single

'act' or series of acts, but the Double Jeopardy Clause imposes no limits on how the legislature may carve up conduct into discrete legal offense units." (footnote omitted)).

The Fifth Amendment is thus a check against the judiciary — it prohibits courts from imposing sentences exceeding "the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas*, 491 U.S. 376, 381 (1989) (citing *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature," the Supreme Court explains, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson*, 467 U.S. at 499 (citations omitted) (citing *Hunter*, 459 U.S. at 366–368 (1983); *Wiltberger*, 5 Wheat. at 93).

When a state statute is at issue, as in this case, the state supreme court's interpretation of the statute controls. *E.g.*, *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("[T]he Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes." (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *Brown v. Ohio*, 432 U.S. 161, 167 (1977) (quoting *Garner v. Louisiana*, 368 U.S. 157, 169 (1961)); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("Under the double jeopardy clause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the

legislature's intent." (collecting cases)); *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988) (citing *Payne v. Smith,* 667 F.2d 541, 548 (6th Cir. 1981)).

In *People v. Calloway*, 671 N.W.2d 733, 735 (Mich. 2003), the Michigan Supreme Court determined that the state legislature intended cumulative punishments for felon in possession of a firearm and felony firearm. This Court is obligated to follow that determination. Petitioner's double jeopardy challenge lacks merit.

**B**

Petitioner's second claim alleges that the trial court erred in four ways: (1) it allowed the complainant to testify that he went to Petitioner's house to purchase drugs; (2) it wrongfully excluded evidence regarding the complainant's propensity for violence, and it prevented Petitioner from presenting a witness who would have testified about a prior violent incident involving the complainant; (3) it referenced Petitioner's two prior felony convictions when informing the jury that Petitioner stipulated to a prior felony conviction; and (4) it erred in instructing the jury on the firearm offenses.

**1**

As noted, a federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

Here, Petitioner claims that the complainant should have been prevented from testifying that he went to Petitioner's house to purchase drugs. The Michigan Court of Appeals held that

the testimony was admissible under Michigan Rule of Evidence 404(b), explaining that "it was relevant to defendant's motive for the shooting, a proper noncharacter purpose. It was the prosecutor's theory that defendant was angry with Thomas, who regularly purchased drugs from him, because Thomas had recently spoken to the police and defendant was concerned that Thomas was a 'snitch.'" *Webber*, 2008 WL 2744295, at *2 (citation omitted)

A claimed violation of a state evidentiary rule or any other provision of state law is not cognizable on habeas review. *See Bey v. Bagley*, 500 F 3d 514, 519 (6th Cir. 2007). Moreover, the Supreme Court has not established that admitting "prior bad acts" or "other acts" evidence violates due process. *See Bugh v. Mitchell*, 329 F. 3d 496, 512 (6th Cir. 2003); *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Given the lack Supreme Court authority on the issue, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120,(2008); *Carey v. Musladin*, 549 U.S. 70, 77( 2006).

**2**

Petitioner next asserts that the trial court erred in excluding evidence and witnesses who would have testified about the complainant's character for violence.

As noted, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000).

To the extent that Petitioner is instead asserting that the court violated his right to present a defense, such an argument is subject to harmless-error review. *Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009). Under that standard, habeas relief cannot be granted unless the

constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In *O'Neal v. McAninch*, 513 U.S. 432 (1995), the Supreme Court clarified that a judge must ask "Do I, the judge, think that the error substantially influenced the jury's decision?" *Id*. at 436-37.

Here, excluding evidence regarding the complainant's character for violence did not substantially influence the jury's decision. The principle issue at trial with respect to the assault with intent to commit murder charge was whether Petitioner acted in self-defense. The excluded evidence was relevant, if at all, to support this defense by showing that the complainant was a violent individual whose character was consistent with Petitioner's version of events. The excluded evidence had no relevance to the firearm offenses. Whether or not Petitioner acted in self-defense, he was still a felon who possessed a firearm during the incident. Because the jury found Petitioner not guilty of the assault offense — despite the exclusion of this defense evidence — any error in excluding the evidence was harmless.

**3**

The same analysis applies to Petitioner's allegation that he was willing to stipulate that he had been convicted of a felony — a fact the prosecutor was required to prove for the felon in possession of a firearm charge. Petitioner asserts that it was superfluous and prejudicial for the trial court to inform the jury that he had been convicted of two prior felonies (rather simply informing the jury that Petitioner had a felony conviction).

Again, the potential prejudice to Petitioner would be that the information showed that Petitioner was a repeat felon and therefore conceivably undermine his self-defense claim to the assault charge. But the potential prejudice had no relevance to the firearm charges. Because the

constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In *O'Neal v. McAninch*, 513 U.S. 432 (1995), the Supreme Court clarified that a judge must ask "Do I, the judge, think that the error substantially influenced the jury's decision?" *Id*. at 436-37.

Here, excluding evidence regarding the complainant's character for violence did not substantially influence the jury's decision. The principle issue at trial with respect to the assault with intent to commit murder charge was whether Petitioner acted in self-defense. The excluded evidence was relevant, if at all, to support this defense by showing that the complainant was a violent individual whose character was consistent with Petitioner's version of events. The excluded evidence had no relevance to the firearm offenses. Whether or not Petitioner acted in self-defense, he was still a felon who possessed a firearm during the incident. Because the jury found Petitioner not guilty of the assault offense — despite the exclusion of this defense evidence — any error in excluding the evidence was harmless.

**3**

The same analysis applies to Petitioner's allegation that he was willing to stipulate that he had been convicted of a felony — a fact the prosecutor was required to prove for the felon in possession of a firearm charge. Petitioner asserts that it was superfluous and prejudicial for the trial court to inform the jury that he had been convicted of two prior felonies (rather simply informing the jury that Petitioner had a felony conviction).

Again, the potential prejudice to Petitioner would be that the information showed that Petitioner was a repeat felon and therefore conceivably undermine his self-defense claim to the assault charge. But the potential prejudice had no relevance to the firearm charges. Because the

jury acquitted Petitioner of the assault charge, any error in informing the jury that Petitioner had two prior felonies was harmless.

**4**

Petitioner next asserts that the jury was erroneously instructed with respect to the firearm charges. He argues that the instructions regarding the possession and intent elements for the offenses inadequately presented the law to the jury. Petitioner did not object to the jury instructions at trial.

Accordingly, when the Michigan Court of Appeals addressed the issue, it limited its review to whether plain error occurred, writing: "Because defendant did not object to the trial court's jury instruction, this issue is not preserved. Accordingly, our review is limited to plain error affecting defendant's substantial rights." *Webber*, 2008 WL 2744295, at *3. Finding that the trial court had not committed plain error, the court of appeals explained that "the trial court's instructions adequately explained the concept of possession. Additionally, because the firearm offenses are general intent crimes, as opposed to specific intent crimes, they do not require a criminal intent beyond the act done." *Id*. at 4 (citation omitted).

By not preserving his objection to the jury instructions consistent the state's procedural rules, Petitioner has procedurally defaulted the claim in this Court. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87(1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).

In general, procedural default applies when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). Not making a contemporaneous objection is a firmly-established as an "adequate and independent" ground

-10-

for declining to review trial errors. *See People v. Carines*, 460 Mich. 750, 763 (1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991). Moreover, plain error review does not constitute a waiver of state procedural default rules. *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007). Petitioner has procedurally defaulted this claim.

A state prisoner who does not comply with a state's procedural rules waives the right to federal habeas review unless he can demonstrate good cause for noncompliance and actual prejudice, or show a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753. To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94(1991).

Here, Petitioner alleges ineffective assistance of trial counsel as cause to excuse his procedural default. But because Petitioner's proffered objection to the instructions would have been futile, however, Petitioner has not shown that counsel was constitutionally ineffective. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). As noted, the Michigan Court of Appeals found that "the trial court's instructions adequately explained the concept of possession" and correctly instructed the jury that Petitioner must have "knowingly carried or possessed a firearm" in order to be convicted. Petitioner has not established cause to excuse his procedural default.

Nor has Petitioner established that a fundamental miscarriage of justice has occurred. This exception requires a showing that a constitutional violation probably resulted in the

conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). The Supreme Court cautions that " 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Here, Petitioner offers no such evidence. Petitioner is not entitled to habeas relief on his jury instruction claim.

## C

Petitioner next asserts that the prosecutor committed misconduct. Specifically, Petitioner argues that the prosecutor wrongfully introduced evidence that the complainant feared Petitioner, vouched for witnesses, argued facts not in evidence, and misstated the law of constructive possession during closing arguments.. Petitioner did not object to the comments at trial. This claim is thus procedurally barred from review for the same reason Petitioner's jury instruction claim is barred.

Seeking an excuse for the default, Petitioner again asserts ineffectiveness of counsel. To establish ineffective assistance of counsel, a Petitioner must demonstrate that his counsel's actions resulted in prejudice — "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Here, all but one of the Petitioner's claims of prosecutorial misconduct were not relevant to the firearm offenses. The comment about the complainant being afraid of Petitioner bore on

the assault charge. Likewise the claim that the prosecutor vouched for prosecution witnesses and argued facts not in evidence concerned the assault charges. Because the jury acquitted Petitioner of the assault charge, the failure to objected to these alleged acts of misconduct did not result in prejudice. *United States v. Harvey*, 653 F.3d 388, 395 (6th Cir. 2011).

The only allegation of misconduct pertinent to the firearm offenses is the claim that the prosecutor misstated the law on constructive possession. As noted, however, the trial court correctly instructed the jury on possession. Moreover, the court instructed the jury that its instructions and not the lawyers statements constituted the law for them to apply. In sum, Petitioner has not demonstrated prejudice.

**D**

Petitioner's fourth claim is that counsel was ineffective for four reasons: (1) counsel did not object to the jury instruction defining possession; (2) counsel did not object to the late filing of the habitual offender charge; (3) counsel did not move to suppress evidence that other weapons were found in Petitioner's house; an d (4) counsel did not make a "jury nullification" argument with respect to the firearm offenses.

In *Strickland* the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. *Id*.

As to the performance prong, a petitioner must identify conduct that was "outside the wide range of professionally competent assistance." *Id*. at 690. In reviewing counsel's performance, the court must presume that counsel rendered adequate assistance and made each

significant decision with the exercise of reasonable professional judgment. *Id*. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has recently emphasized the deference that must be accorded trial attorneys performance, explaining: "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citations omitted).

Here, Petitioner's first allegation of ineffective assistance has been addressed above. Petitioner was not prejudiced by the lack of objection to the jury instructions.

Petitioner next asserts that his counsel was ineffective for failing to object to the late filing of the habitual offender charge. Again, he does demonstrate prejudice — Petitioner was not sentenced as a habitual offender. See *Webber*, 2008 WL 2744295, at *5 ("Although the habitual offender statute, MCL 769.12, would have permitted defendant's statutory five-year

-14-

maximum sentence for felon-in-possession to be increased, the trial court did not impose an enhanced sentence.").

Petitioner next argues that his counsel was ineffective by not objecting to the introduction of evidence that other weapons were found in his home, including two BB guns, a baton, and a "sap." Again, Petitioner cannot demonstrate prejudice because these items were not connected to the firearm charges. As the Michigan Court of Appeals explained, "Even if counsel should have moved to exclude evidence of the weapons, we cannot conclude that there is a reasonable probability that the result of the proceeding would have been different had the evidence been excluded. *Webber*, 2008 WL 2744295, at *6.

Lastly, Petitioner contends that his counsel should have made a "jury nullification" argument. Essentially, Petitioner asserts that his counsel should have suggested to the jury to ignore the fact that Petitioner was technically guilty of the firearm offenses, but to acquit him anyway because he acted in self-defense. This argument lacks merit — *Strickland* requires a reviewing court to assume that the fact-finder will follow its instructions. 466 U.S. at 694–95.

Because none of Petitioner's allegations of ineffective assistance have merit, the claim does not provide a basis for granting habeas relief.

### E

Petitioner's fifth claim asserts that there was insufficient evidence to support his firearm convictions. He asserts that his testimony that it was the complainant who pulled a gun on him, and that the complainant was accidently shot during the ensuing struggle, was more credible than the complainant's version of events.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319(1979) (emphasis in original). The Supreme Court recently characterized this standard as requiring a defendant to show that the jury's verdict "was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Under AEDPA, the standard becomes more difficult for a petitioner to meet. This is because "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id*.

Here, the Michigan Court of Appeals cited the *Jackson* standard, and then it applied it to the facts of Petitioner's case in a manner that was not objectively unreasonable. The state court noted that the complainant testified that it was Petitioner who pulled the gun on him, and there was a stipulation that Petitioner was a convicted felon. It is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326 . It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. This claim lacks merit.

### F

Petitioner's final claim asserts that his convictions are unconstitutional under *District of Columbia v. Heller*, 554 U.S. 570 (2008), because he had a Second Amendment right to keep guns at his home for self-defense. The first time that Petitioner raised this claim was in his petition to the Michigan Supreme Court, which denied leave to appeal. The claim was not ruled upon by the state courts. The claim is therefore unexhausted and not properly before this Court.

### IV

Before Petitioner may appeal this Court's decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336–37. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 1 1(a), 28 U.S.C. foll. § 2254.

Here, Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. Petitioner will also not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**V**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 30, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Scott Webber, at 610 S. Main Street, Mt. Pleasant, MI 48858 by first class U.S. mail on January 30, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS